Caria, per
Butler, J.
There was no objection taken to the pleadings on the circuit; and so far as they might go to affect any of the questions which have been made for a new trial, they should not now be permitted to have any influence on the decision of this court. I can perceive nothing in them, however, which would have deprived the defendant of the right to make the questions which involved the merits of the case, and which were submitted to the j ury; under his plea of not detinet, he had a right to contend that he was not holding the negroes against the title of the plaintiffs, which, in effect, put in issue all their titles, whatever they might be. The defendant could not be disturbed in his prim,a facie right to the property until a legal ti- *609 tie had been established in another, and which the plaintiffs alleged in their declaration was vested in them, either by a gift, or by the operation of the statute of limitations.
For the purpose of considering and deciding on the validity of the gift, it was assumed by the Judge below, that Mormon had legally vested in him a good title to Haley, at the time he sent her to his daughter, the plaintiff. The possession, in the first instance, seems to have been given to the mother of Amanda, for the temporary or permanent benefit of her infant child.
Did Mormon part with his possession for the purpose of making a gift of the girl to his daughter; or, did he part with it temporarily only, and with an understanding that he could reclaim it at any subsequent time, when he might think proper to do so 1
In the first point of view, the title in the plaintiff, Amanda, would have been perfect, and beyond the control of the donor; in the other, his right to resume and dispose of the ownership of the negro would not have been affected.
Two juries, by their verdicts, have found that no valid gift was ever made, and that it was, therefore, legally competent for Mormon to return to Maybin the negroes which he had bought from him, and thereby subject them to the purchase of Jack Sims. If the gift had been established, the minority of Amanda would have protected her rights against the operation of the statute of limitations. That being found against her, necessarily, by the verdict, we must next look at her rights as they may have been affected by the statute of limitations in her favor. For although Sims, and those claiming under him, could not have availed themselves of the statute, it was competent for the plaintiff to have done so; and this brings up for consideration the question of possession, in respect to which, and the evidence connected with it, several of the grounds of appeal have arisen.
Although the first ground is but remotely connected with the question, it is necessary to consider it. The fact being ascertained that Haley remained at Mrs. Nancy Sims, after the marriage of Cicily with James Lyles, the question was asked the witness, (Mrs. Cicily Lyles,) what reason her husband gave why he would not take Haley with him; *610 or to put it in a different form, what reason he gave for refusing to let his wife take the girl. These questions were propounded by the plaintiff's counsel for her benefit, and for the purpose, I suppose, of shewing that there was no intentional abandonment of possession. The witness was not prevented from saying that her husband refused to take the negro, or that he refused to let his wife take her; but the object of the question was, to get out from the witness what her husband said at the time, by way of giving his reasons for not taking the girl, Haley; in other words, to give the reasons of his refusal. As they were not stated, we are left to conjecture as to what the reasons were. I rejected them as hearsay declarations, and not forming, as was contended in argument, any part of the fes gestee. Declarations in the nature of fes gestee, to be admitted as original evidence must be so intimately connected with the main question at issue, as to give it explanation and character, and to be made simultaneously with it, They should be made too, by one who is performing an act, or who has just performed it, which indicates his present purpose and intention in relation to it. It is sometimes the case that acts are unintelligible, without these mingled or cot temporaneous explanations, particularly in matters depending on motive, purpose, or conduct; as professor Greenleaf observes in his Treatise on Evidence, 120, “it is extremely difficult, if not impossible, to bring this class of cases within the limits of a certain and uniform description. Their admissibility must be determined by the Judge, according to their relation to the fact, and in the exercise of his sound discretion.” Where declarations would be merely a narration of past occurrences, or where they consist of mere opinions in relation to any matter connected with the case before the court, they ought not to be given in evidence. The declarations or reasons of Mrs. Lyles's husband were not made in relation to any transaction in which he had been engaged. They may, if they had come out, have been wholly immaterial, or they may have consisted of a narrative of facts; or of suggestions as to the matters that had been brought to his knowledge by the information of others. What they were, I cannot tell; but I was satisfied they were connected with no fact or transaction with which he *611 was personally connected, and it seems to me, now, that it was competent for his wife to have said all that could have been properly established by his declarations; and they were, therefore, objectionable, both as hearsay and secondary evidence.
As the fourth ground presents a question which is somewhat connected with the above subject, I would dispose of that next. In what light should the declarations of Mrs. Nancy Sims be regarded? It was contended that they were the hearsay evidence of one who had no legal connection with the suit, and ought to have been on that account rejected. I admitted them as original evidence, on the ground that they were declarations in disparagement of the title of the declarant, and went to give character to her possession. I did not undertake to decide w'hether the possession was in Mrs. Nancy Sims or in Amanda, nor did I determine whether Mrs. Nancy Sims held for Amanda, or for her son Jack Sims. I could only look to the fact as it was stated by the witnesses. When Mrs. Cicily Lyles said she had the possession, I allowed her to say (and if she had been dead, I would have allowed her declarations to the same effect) that she held the girl Haley for the plaintiff; and when it was proved that Mrs. Nancy Sims had the actual possession, which was prima facie title in herself, I allowed her declarations to be given in evidence, to give character to the act of possession. If such evidence could have been precluded on the grounds that Mrs. Lyle& had first proved possession in herself, then the rights of the parties would depend on the priority of examination, and not on the truth of the fact in relation to possession, to be determined by the jury. The court could look only to the prima, facie position of the parties claiming the actual possession. It may have been at one time in one, and at another time in the other. The character of the possessions could not be well ascertained, but by the verbal explanations of the parties holding them. They would go to shew the present purpose and intention in relation to the possession, and if made in good faith, to be judged of by other rules of evidence, they should be regarded as part of the res gestee. It is upon this principle that professor Green-leaf regards the declarations of a tenant, in disparagement *612 of his own title, as good evidence to go to the jury. In the case of Peaceable vs. Watson, 4 Taunton, 17, Mansfield, C. J. says, possession is prima facie evidence of seizure in fee simple, and the declaration of the possessor, that he is a . tenant of another, it is said, makes most strongly against his own interest, and, therefore, is admissible. See, also, the case of West Cambridge vs. Lexington, 2 Pick. 536. So far as it regards the principle, there can be no kind of difference between real and personal property. In both cases the object would be to ascertain the purpose of the act in holding possession.
As to the second ground, which was insisted on in argument, and which is of a different character from those I have just disposed of, it'may be sufficient to say, that the defendant was not bound to introduce any evidence at all of his title; and whether, therefore, his title, under the proceeding in attachment was valid or not, was immaterial. The plaintiffs were bound to shew title in themselves,and if they had done so, the proceedings in attachment would have availed the defendant nothing, no matter how regular they might have been. The defendant should not, therefore, be prejudiced by their non-production, when the plaintiffs have failed to make an independent title in themselves. If these proceedings were in any wise of importance, they should have been produced by the plaintiffs themselves, either to affect the evidence or for any other purpose.
I regard it as unnecessary to advert to any other of the grounds of appeal, as they were not pressed, and seem to have no merit in them. Motion refused.
O’Neall, Evans, Wardlaw and Frost, JJ. concurred.